UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Tampa Division)

PATTERSON CEUS,

     Plaintiff,

vs.

CITY OF TAMPA,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

Plaintiff, PATTERSON CEUS, by and through his undersigned counsel, hereby sues Defendant, CITY OF TAMPA, and states as follows:

## INTRODUCTION

1.      PATTERSON CEUS brings this action against CITY OF TAMPA, his former employer, to remedy race discrimination and retaliation he suffered in the workplace as a member of Tampa Fire Rescue.  Accordingly, Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, Chapter 760.10, *et seq.*, Florida Statutes (2005) ("FCRA").  By the filing of this action, Plaintiff seeks compensatory damages, declaratory and equitable relief, and an award of costs and attorneys' fees.

## JURISDICTION AND VENUE

2.      The Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under

the FCRA pursuant to 28 U.S.C. § 1367(a), since those claims are so related to Plaintiff's Title VII

claims that they form part of the same case or controversy.

3. This action properly lies in the Tampa Division of the United States District Court

for the Middle District of Florida, because the unlawful employment practices were committed in

Hillsborough County and all employment records relevant to such unlawful employment practices

are maintained and administered within this judicial district.

## PARTIES

4. Plaintiff, PATTERSON CEUS (hereafter "Plaintiff" or "CEUS") is, and at all times

material has been, a citizen and resident of Miami Dade County, Florida, over the age of 18 years,

and otherwise *sui juris*. Additionally, CEUS is, and was at all times material hereto, an "employee"

of Defendant within the meaning of the Title VII and the FCRA, and was employed as a firefighter

by Tampa Fire Rescue, a Department of the CITY OF TAMPA.

5. CEUS is protected by the anti-discrimination provisions of Title VII and the FCRA

based on his race (black). Additionally, by complaining of discrimination in the workplace and

filing administrative charges of discrimination, CEUS is among the classes of persons protected

by the anti-retaliation provisions of Title VII and the FCRA.

6. Defendant, CITY OF TAMPA (hereafter referred to as "Defendant," "CITY," or

"TAMPA") is a Florida municipal corporation located in Hillsborough County, Florida, which

operates Tampa Fire Rescue ("TFR"), and is an "employer" as defined by Title VII and the FCRA.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7.      On or about July 16, 2013, CEUS filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and the Florida Commission on Human Relations (Charge No. 511-2013-02397), alleging race discrimination and retaliation.

8.      On or about September 24, 2014, CEUS filed an additional Charge of Discrimination with the United States Equal Employment Opportunity Commission and the Florida Commission on Human Relations (Charge No. 511-2014-02712), alleging race discrimination and retaliation.

9.      On or about May 8, 2015, CEUS amended EEOC Charge No. 511-2014-02712 to include additional claims based on Plaintiff's termination on May 6, 2015.

10.     On March 22, 2016, the United States Department of Justice ("DOJ") issued Plaintiff a notice of right to sue on EEOC Charge No. 511-2014-02712 and EEOC Charge No. 511-2013-02397.  Copies of Plaintiff's EEOC Charges and Right to Sue Letters are attached hereto as Exhibit A.

11.     This lawsuit is being filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue from the DOJ.

12.     In addition, as of the date of this action, more than 180 have passed without the FCHR either conciliating CEUS's Charges of Discrimination, or determining whether there is reasonable cause to believe that any unlawful employment practices have occurred.  Therefore, all procedural requirements for the filing of Plaintiff's claims under the FCRA have been met.

13.     Plaintiff has retained the undersigned law firm to represent him in this action, and is obligated to pay a reasonable fee for his attorneys' services.

## FACTUAL ALLEGATIONS

14.     Until his termination on May 6, 2015, CEUS was employed by Defendant CITY OF TAMPA as a firefighter with TFR.

15.     CEUS was hired by Defendant in March 2010. He was initially assigned to Station 18 under the command of captain Mike Martinez. During his first week at Station 18, the other firefighters tried to "haze" him by pouring a five-gallon bucket of water on him but CEUS ducked out of the way before grabbing a second bucket of water and throwing it back at his co-workers.

16.     While he was assigned to Station 18, Captain Martinez told CEUS that he spoke with a Southern accent and sounded like a slave, and that he should not "talk like a slave" when the Fire Chief came to the Station. On another occasion, Martinez told CEUS that he had a racist pit bull dog that only barked at black people.

17.     In March 2011, Martinez gave Plaintiff his probationary Performance Evaluation, in which he gave CEUS a 35 and rated Plaintiff as meeting acceptable performance standards.

18.     After his first year under Mike Martinez, Captain Troy Jones assumed command of Station 18. Plaintiff performed well under Captain Jones and in March 2012, Jones gave CEUS a score of 39 on his Performance Evaluation, which exceeded acceptable performance standards.

19.     After two years at Station 18, CEUS was transferred to Station 22-C under the command of Captains Kevin Reed and Larry Gray. Plaintiff performed well at Station 22-C, and he received a score of 38 on his Performance Evaluation in March 2013.

20.     In March 2013, CEUS was involuntarily transferred to Station 18-C under Captain Brian Eichholz, who gave him a score of 32 on his 90-day Performance Evaluation following the

4

transfer. At Station 18-C, CEUS was repeatedly required to work as a paramedic on the recue car without being paid the premium pay for a paramedic.

21.     In May 3013, CEUS submitted a request to be transferred to Station 10, which was staffed by mostly black firefighters under the command of Chief Edward Chapman, who was also black. The transfer request was approved.

22.     In June 2013, Plaintiff called Captain Chapman before reporting to Station 10, and Chapman asked CEUS to meet him for breakfast. CEUS was getting ready to drive back to after shift at Station 10, so he suggested they meet at the IHOP restaurant in Brandon. Captain Chapman declined the invitation and told CEUS to meet him at Open Café in Tampa, a black-owned restaurant in a predominately black neighborhood.

23.     When Plaintiff sat down at the table where Captain Chapman was waiting for him at the Open Café, Chapman explained that the reason he wanted to meet at that location was because he could openly use racial slurs about white people, after which he proceeded to give examples such as "cracker, honky, stank white people, hillbilly and peckerwood." CEUS was very uncomfortable with the words being used by Captain Chapman and was immediately concerned that he had made the wrong choice when he requested a transfer to Station 10.

24.     After Captain Chapman finished his string of slurs about white people, they were joined by Driver/Engineer Vince Jackson, who said he was there to support CEUS in his new assignment at Station 10. Once Vince Jackson joined them, Captain Chapman continued the uncomfortable conversation, asking CEUS if he was "raised around white people" and telling him that he trusted white people too much, and that was why he was mistreated by them at his previous stations. CEUS was shocked at the racist comments that Captain Chapman made about white

people, but he was reluctant to say anything since it was the first time he had met Chapman, and he was going to be under his command once he started working at Station 10.

25.     A few weeks later, Captain Chapman asked CEUS about his future plans with the Department. Plaintiff explained to Chapman that he just wanted to be a firefighter, and that he had no plans to advance into the officer ranks. In response, Chapman told CEUS that he was "full of shit."     During other conversations about CEUS' plans with the Department, CEUS advised Chapman that he felt the Department was run by racists and for racists, and he had no interest in trying to advance in what he believed was a racist Department.

26.     On July 13, 2013, CEUS filed his first EEOC Charge of Discrimination against Defendant, in which he raised claims for race discrimination and retaliation based on his treatment at Station 18-C before he transferred to Station 10.

27.     After his conversations with Captain Chapman about his perception of racism within the Department, Chapman and other members of the command staff began to treat CEUS differently. This treatment included, but was not limited to: micro-managing CEUS and making unreasonable demands for Plaintiff to perform tasks not required of other firefighters under Chapman's command; subjecting CEUS to unreasonable scrutiny and unwarranted criticism of his job performance; disciplining CEUS for alleged misconduct that he either did not engage in or which was tolerated when engaged in by others; downgrading CEUS' performance evaluations to discredit him and prevent him from advancing within the Department; and ultimately, terminating CEUS' employment on May 5, 2015.

28.     For example, after CEUS was placed on light duty in July 2013 so that he could be evaluated for a possible heart condition, Captain Chapman ordered Plaintiff to help other

6

firefighters clean the station, even though the work was beyond his medical restrictions. As a result, Plaintiff injured his groin, but when CEUS returned to work in August 2013, Chapman would not allow him to take his prescribed pain medication while on duty, even though Plaintiff was cleared to do so by his doctor and the occupational health nurse confirmed that he could take the medication at work.

29.     In October 2013, Captain Chapman began to verbally counsel CEUS for his "disrespectful attitude," and several additional counselling sessions were held in October and November.  On December 30, 2013, CEUS was issued two Career Counseling Forms: one for allegedly questioning Captain Chapman's orders and the other for alleged rudeness to a female crew member during a call.

30.     During a meeting held January 8, 2014, Captain Chapman again asked Plaintiff about his future goals in the Department, and CEUS told Chapman again that he felt the department was racist and had no interest in advancement.  Captain Chapman reacted by screaming at Plaintiff and telling him once again that he "was full of shit" for believing the Department was racist.

31.     When CEUS was given a written summary of the January 8th meeting, he wrote on the document that "I have encountered all kinds of discrimination in this job, and I have made up my mind that this is a racist department.  I just want to be left alone and allowed to do my job as a firefighter."

32.     On January 18, 2014, after Plaintiff requested FMLA leave to deal with some personal family medical issues, Captain Chapman issued Plaintiff another Career Counselling Form for alleged violations of TFR policy regarding unscheduled leave.

7

33.     CEUS filed a complaint of bullying, harassment and discrimination against Captain Chapman on January 29, 2014. The complaint was submitted to District Chief Shawn Carroll and Personnel Officer David Solorzano.

34.     In early February 2014, Plaintiff heard rumors that Captain Chapman was telling people that he had so much disciplinary paperwork on CEUS that there was no way CEUS was getting a raise.

35.     Captain Chapman made good on his statements and gave CEUS a poor evaluation in February 2014 with a rating of 31 that disqualified CEUS from receiving a merit pay increase. This was the lowest rating CEUS had received on his Performance Evaluation since being hired in 2010. In the section regarding "Attitude," Captain Chapman noted that "Ceus arrived at Station 10 with very positive attitude and appeared eager to learn," but "within three months of being at Station 10," he "started displaying a negative attitude toward supervision and the department."

36.     District Chief Carroll added his comments to the evaluation, stating that he was disappointed that Plaintiff had "responded so poorly to supervision," and that it was obvious to him that CEUS had "made up his mind that this is a racist department." District Chief Carroll further noted that, as an Executive Officer of Tampa Fire Rescue, he took "offense to F/F Ceus' statement," and he expressed his belief that CEUS "should find employment elsewhere due to his beliefs."

37.     CEUS submitted a response to his evaluation on February 19, 2014, in which he explained the basis for his belief that Captain Chapman had evaluated him unfairly. His written response summarized the meeting he had with Captain Chapman at the Open Café in June 2013 and described other "racially charged" conversations in which Chapman would speak negatively

8

about white members of the Department and use racial slurs to describe them. CEUS explained in his evaluation response that he was not comfortable with the racial language about whites that Captain Chapman employed on a regular basis and that he had reported it to upper management. Plaintiff concluded his response by assuring his superiors that he enjoyed his job and was happy with his chosen career path with Tampa Fire Rescue. He did not want to seek employment elsewhere he explained, but wanted to express his "desire to ensure that the racism that is occurring within the department [is] addressed and not tolerated, so that TFR employees are not working in a hostile environment."

38.     On the same day he responded to his evaluation, CEUS submitted his response to the evaluation as further support for the discrimination complaint he had filed against Captain Chapman on January 29, 2016.

39.     Fire Chief Thomas Forward gave the final approval for CEUS evaluation on February 26, 2014. In his comments, he noted that the evaluation displayed a "professional standard that is less than satisfactory and is unacceptable." Fire Chief Thomas also requested "further evaluation" of Plaintiff's "fitness for this profession with the department."

40.     After receiving his 2013 to 2014 evaluation, CEUS was transferred again, this time to Station 4 under the supervision of Captain James Gilligan for a 90-day review period to improve his performance. At the end of the 90-day period, Captain Gilligan gave Plaintiff a satisfactory evaluation with a score of 33, and his comments on the evaluation emphasized CEUS' improved performance while under his supervision.

41.     Following the satisfactory evaluation from Captain Gilligan, CEUS' request to return to his bid position at Station 10 was denied.

9

42.     During a conversation with Kimberly Marple on May 22, 2014, CEUS learned that TFR had not informed Defendant's Employee Relations Department of his discrimination complaint against Captain Chapman in February 2014. Ms. Marple further told CEUS that she had no information regarding the formal inquiry allegedly conducted by Fire Chief Thomas Forward into CEUS' allegations. After speaking with Ms. Marple, Plaintiff sent a memo dated May 22, 2014, to Kimberly Crum, David Solorzano and Chief Forward inquiring as to the status of his discrimination complaint and advising them that he had also filed EEOC charges against TAMPA and TFR. He also requested copies of any documents regarding the investigation that had allegedly been conducted.

43.     After sending the memo, CEUS was informed by Captain Solorzano that he was transferred to Station 16 pending the outcome of the investigation into his complaints of discrimination against Captain Chapman. After one shift at Station 14, CEUS was sent back to Station 4.

44.     When he returned to Station 4, CEUS was once again required to work as a paramedic without being paid the premium pay for a paramedic. Ironically, the denial of paramedic pay at Station 18-C in 2013 was one of the issues raised in CEUS' initial EEOC Complaint filed July 16, 2103. The practice of denying CEUS paramedic pay continued for several months until Plaintiff was transferred back to Station 10 per his request at the end of 2014.

45.     CEUS was informed by memo dated September 10, 2014, that he was going to be interviewed in connection with his discrimination complaint against Captain Chapman on September 17, 2014. During the meeting to discuss CEUS' complaint of discrimination, District Chief was extremely hostile and dismissive of Plaintiff's testimony, and at one point he told CEUS

10

that "if you keep this shit up I will put you on a 40-hour week."   The threat from District Chief Carroll was extremely disconcerting for Plaintiff, because he lived in Miami and if he was required to work a straight 40-hour week he literally would not be able to return home each night.   In addition, such a 40-hour schedule would have violated both TFR policy, TAMPA city policy and the collective bargaining agreement between the IAFF and the CITY.

46.     On September 24, 2014, CEUS filed his second EEOC Charge of Discrimination (Charge No. 511-2014-02712) against Defendant, based on race and retaliation.   CEUS alleged that he was being subjected to a hostile work environment that included being threatened with schedule changes, being required to obtain certifications not required of other firefighters and being denied paramedic pay despite being required to perform paramedic duties.   Plaintiff further claimed that he felt that Defendant was trying to force him to resign.

47.     Starting in or about October 2014, TFR began to systematically deny CEUS' requests to do exchanges of time (EOT) with other firefighters.   No other firefighters had their EOTs denied as often as CEUS, and the denial of the scheduling flexibility affording by the EOT program created a significant hardship on Plaintiff, who lived in Miami.

48.     Plaintiff received a Career Counselling Form on November 21, 2014, for alleged violations of TFR's facial hair policy, which prohibits mustaches that extend more than ½ inches from the corner of the mouth.  CUES was accused of having a non-compliant goatee but Defendant chose not to discipline numerous white firefighters and command staff who routinely violated the facial hair policies with non-compliant mustaches, including but not limited to captain Larry Gray, who for years had a prominent "walrus" mustache that extended several inches below his chin.

49.     During a meeting held January 6, 2015, David Solorzano informed CEUS that TFR had completed the investigation into his complaint of discrimination against Captain Chapman, and had determined that the complaint was unfounded.

50.     On March 24, 2015, CEUS was issued a Notice of Disciplinary Action informing him that he was being dismissed from his position with TFR for insubordination, neglect of duty and breach of peace, based on an incident which allegedly occurred on February 13, 2015.

51.     The Notice of Disciplinary Action accused CEUS of cutting the lock off of District Chief Chapman's locker at Station 10, and placing the contents of the locker in a black garbage bag on the bay floor.   Apparently, Chapman had been promoted to District Chief on January 18, 2015, but was allowed to leave his belongings in his locker at Station 10 pending notification of his next assignment.

52.     After cutting the lock from District Chief Chapman's locker and removing the contents, CEUS was alleged to have returned to Station 10 the next day to inform Captain William Paz that he had cut the lock from District Chief Chapman's locker and removed the contents.

53.     Even after he was proposed for termination, Plaintiff received another Career Counselling Form on April 5, 2015, for alleged violations of TFR facial hair policies.  Once again CEUS was disciplined for allegedly having a mustache that extended more than ½ inch from the corners of his mouth, but Defendant did not discipline numerous white firefighters and command staff who routinely violated the facial hair policies with non-compliant mustaches.

54.     Although it defies credulity to suggest that CEUS would have vandalized District Chief Chapman's locker and then simply confessed his sins the next day to Captain William Paz, Defendant terminated CEUS based on the Notice of Disciplinary Action, effective May 5, 2015.

55.     There are no legitimate non-discriminatory or non-retaliatory reasons for Plaintiff's termination by Defendant.

## COUNT I

### TITLE VII CLAIM
### RACE DISCRIMINATION/DISPARATE TREATMENT

56.     Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

57.     The conduct of Defendant more particularly alleged constitutes a violation of Title VII, which makes it an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race.

58.     Specifically, Defendant subjected CEUS to unwarranted disciplinary actions, and, ultimately, the termination of his employment.

59.     The adverse action taken against Plaintiff by Defendant was motivated by Plaintiff's race (black); Defendant did not take similar adverse actions against non-black employees who had committed similar or more serious violations of its policies and procedures.

60.     As a result of Defendant's unlawful conduct in violation of Title VII, Plaintiff has suffered compensatory damages, including, but not limited to, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, PATTERSON CEUS, prays that this Court will:

(a)     Declare Defendant's conduct to be in violation of Title VII;

(b)     Enjoin Defendant from further engaging in such conduct;

13

(c)     Order Defendant to reinstate Plaintiff to his position as firefighter, or award front pay in lieu of reinstatement;

(d)     Award Plaintiff lost wages and other pecuniary damages;

(e)     Award Plaintiff non-pecuniary damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f)     Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988(b), and;

(g)     Grant such other and further relief as may be deemed just and proper.

## COUNT II

### TITLE VII CLAIM
### RETALIATION

61.     Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

62.     The conduct of Defendant more particularly alleged above constitutes a violation of Title VII, 42 U.S.C. 2000e-3, which makes it an unlawful employment practice for an employer to discriminate against any employee based on the employee's opposition to a practice made unlawful by Title VII, or because the employee has participated in the filing of a charge of discrimination with the EEOC.

63.     CEUS is protected by Title VII based on his opposition to what he reasonably believed to be unlawful discrimination and retaliation in the workplace, as well as the fact that he filed administrative charges of discrimination with the EEOC and participated in the investigation of the charges.

64.     As a result of Plaintiff's protected activity under Title VII, Defendant subjected CEUS to unwarranted disciplinary actions, and, ultimately, the termination of his employment.

14

65. As a result of Defendant's unlawful conduct in violation of Title VII, Plaintiff has suffered compensatory damages, including, but not limited to, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, PATTERSON CEUS, prays that this Court will:

(a) Declare Defendant's conduct to be in violation of Title VII;

(b) Enjoin Defendant from further engaging in such conduct;

(c) Order Defendant to reinstate CEUS to the position of firefighter, or award front pay in lieu of reinstatement;

(d) Award Plaintiff lost wages and other pecuniary damages until his reinstatement;

(e) Award Plaintiff non-pecuniary damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f) Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988(b), and;

(g) Grant such other and further relief as may be deemed just and proper.

**COUNT III**

**VIOLATION OF § 760.10, FLORIDA STATUTES**
**RACE DISCRIMINATION/DISPARATE TREATMENT**

66. Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

67. The conduct of Defendant more particularly alleged above constitutes a violation of the Florida Civil Rights Act of 1992, Chapter 760.10(1)(a), Fla. Stat., which makes it an unlawful employment practice for an employer to discriminate against any individual with respect

to compensation, terms, conditions, or privileges of employment, because of such individual's race.

68.      Specifically, Defendant subjected CEUS to unwarranted disciplinary actions, and, ultimately, the termination of his employment.

69.      The adverse action taken against Plaintiff by Defendant was motivated by Plaintiff's race (black); Defendant did not take similar adverse actions against non-black employees who had committed similar or more serious violations of its policies and procedures.

70.      As a result of Defendant's unlawful conduct in violation of the FCRA, Plaintiff has suffered compensatory damages, including, but not limited to, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, PATTERSON CEUS, prays that this Court will:

(a)      Declare Defendant's conduct to be in violation of the FCRA;

(b)      Enjoin Defendant from further engaging in such conduct;

(c)      Order Defendant to reinstate CEUS to the position of firefighter, or award front pay in lieu of reinstatement;

(d)      Award Plaintiff lost wages and other pecuniary damages until his reinstatement;

(e)      Award Plaintiff non-pecuniary damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f)      Award Plaintiff his costs and reasonable attorney's fees pursuant to Chapter 760.11(5), Fla. Stat., and;

(g)      Grant such other and further relief as may be deemed just and proper.

16

## COUNT IV

### VIOLATION OF §760.10, FLORIDA STATUTES
### RETALIATION

71.     Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

72.     The conduct of Defendant more particularly alleged above constitutes a violation of the Florida Civil Rights Act of 1992, Chapter 760.10(7)(a), Fla. Stat., which makes it an unlawful employment practice for an employer to discriminate against any person because that person has opposed an unlawful employment practice under the FCRA or participated in the filing of a charge of discrimination with the FCHR.

73.     CEUS is protected by the FCRA based on his opposition to what he reasonably believed to be unlawful discrimination and retaliation in the workplace, as well as the fact that he filed administrative charges of discrimination with the FCHR and participated in the investigation of the charges.

74.     As a result of Plaintiff's protected activity under the FCRA, Defendant subjected CEUS to unwarranted disciplinary actions, and, ultimately, the termination of his employment.

75.     As a result of Defendant's unlawful conduct in violation of the FCRA, Plaintiff has suffered compensatory damages, including, but not limited to, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, PATTERSON CEUS, prays that this Court will:

(a)     Declare Defendant's conduct to be in violation of the FCRA;

(b)     Enjoin Defendant from further engaging in such conduct;

17

(c)     Order Defendant to reinstate CEUS to the position of firefighter, or award front pay in lieu of reinstatement;

(d)     Award Plaintiff lost wages and other pecuniary damages until his reinstatement;

(e)     Award Plaintiff non-pecuniary damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f)     Award Plaintiff his costs and reasonable attorney's fees pursuant to Chapter 760.11(5), Fla. Stat., and;

(g)     Grant such other and further relief as may be deemed just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

By:

Christopher C. Sharp, Esq.
Fla. Bar No. 996858
Email: csharplaw@aol.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, FL 33315
Phone: (954) 909-4246
Fax: (954) 909-4265
Dated: June 11, 2016                    Counsel for Plaintiff

18

EEOC Form 5 (11/29)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 511-2013-02397 |

**Florida Commission On Human Relations** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Patterson Ceus** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| **1821 N.W. 82nd Street, Miami, FL 33147** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **CITY OF TAMPA/FIRE DEPT.** | **Unknown** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **5706 30th St.,  Tampa, FL 33602** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **09-18-2012** | **07-16-2013** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Personal Harm**
I began working for Respondent on or about March 15, 2010 for the position of Fire Fighter. Immediately in training and in from other employees we were informed that "Rookies do not have any avenues to complain to the union etc." I was assigned to Station 18 "C" shift. I was assigned to work a shift like no other Fire Fighter has been assigned, which included being placed on the engine in the day time and being placed the rescue by night. This means that I would never stop and would be constantly working. I was placed as the 3rd man with the Lt. and the Paramedic and was made to do the functions of the paramedic but was not paid for it. I even submitted a request (30 days later) to be paid for a job in which I was asked to and agreed to work as a higher rank and took on higher responsibilities but was denied the additional pay. I was told that I submitted it too late but I have seen others get paid for this same task. I have been disciplined and the one of the discipline had been ordered to be removed from my file by the Personnel Director Joseph Provenzano but this order was not followed and it is still in my personnel file and I have a copy. I have complained about the disparate treatment on the basis of my Race to HR but was not given the option to transfer to resolve the immediate situation as others have been given. The union informed me that Rookies can go to grieve but they are still being informed that they cannot grieve. This I believe may chill new employees from seeking assistance for issues and for complaining of discrimination. I was told by Schoemaker that the only reason I was hired was because I was Black and it was to fill a quota.

**Respondent's Reason for Personal Harm**
None given.

**Discrimination Statement**
I believe that I have been discriminated on the basis of my Race, Black and in Retaliation for my complaint that I brought to HR and engaging in protected in violation of Title VII of the Civil Rights Act of 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief SIGNATURE OF COMPLAINANT |
| Jul 16, 2013 | |

2013 AUG 8  EEOC - TAMPA

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 511-2014-02712 |
| | | and EEOC |

| State or local Agency, if any | | |
|---|---|---|

| Name (indicate Mr., Ms., Mrs.)<br>**Mr. Patterson Ceus** | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|

| Street Address                          City, State and ZIP Code<br>**1821 N.W. 82nd Street, Miami, FL 33147** |
|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name<br>**CITY OF TAMPA/FIRE DEPT.** | No. Employees, Members<br>**Unknown** | Phone No. (Include Area Code) |
|---|---|---|

| Street Address                          City, State and ZIP Code<br>**5706 30th St.,  Tampa, FL 33602** |
|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address                          City, State and ZIP Code |
|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br>☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest      Latest<br>**09-01-2014    09-17-2014**<br><br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Personal Harm**
I began working for the Respondent on or about March 15, 2010, for the position of Firefighter.  I had a meeting with my supervisor and this meeting he threatened me and told me that Respondent is going to change my schedule from my flexible 8 day shift change schedule to a regular daily working schedule, in which no one is assigned to.  The Respondent is forcing me to get a certification that other non-Black coworkers do not have and they have several years of seniority over me.  These have not been threatened or subjected to a hostile work environment like I have.  I believe that the Respondent is forcing me to resign. I am still being required to work as a paramedic but Respondent is not giving me Paramedic level pay.
**Respondent's Reason for Personal Harm**
None given.
**Discrimination Statement**
I believe that I have been discriminated on the basis of my Race, Black and in Retaliation for my EEOC Charges and protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 9-24-2014<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA<br>☒ EEOC | 511-2014-02712 |
| | State or local Agency, if any | and EEOC |

## Amendment to EEOC Charge 511-2014-02712

### Personal Harm

The Respondent granted and denied in part my grievance on 03/23/2015.  I was not allowed to have employees cover me during my sick leave.  I know of other white employees that were allowed to *city* have replacements to do their work on their sick days.  I was denied this opportunity and the ~~union~~ denied me a refund for the personal leave that I had to use.  The white employees did not have to use their personal time and people were able to donate their time to these employees and they received their regular paychecks. The Respondent Discharged me on 05-6-2015 for allegedly breaking into the locker of Captain.

### Discrimination Statement

I believe that I have been discriminated on the basis of my race, Black and Retaliation for my EEOC Charges in violation of Title VII of the Civil Rights Act of 1964 as amended.

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief<br>SIGNATURE OF COMPLAINANT |
| 5-8-2015<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
9590 9401 0174 5234 6143 92

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

March 22, 2016

Mr. Patterson Ceus
c/o Christopher C. Sharp, Esquire
Sharp Law Firm
1600 West State Road 84
Suite C
Ft. Lauderdale, FL  33315

Re:  EEOC Charge Against City of Tampa, Fire Dept.
     No. 511201402712

Dear Mr. Ceus:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Tampa Area Office, Tampa, FL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by _____
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Tampa Area Office, EEOC
    City of Tampa, Fire Dept.



U.S. Department of Justice
Civil Rights Division

CERTIFIED MAIL
9590 9401 0174 5234 6143 92

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

March 22, 2016

Mr. Patterson Ceus
c/o Christopher C. Sharp, Esquire
Sharp Law Firm
1600 West State Road 84
Suite C
Ft. Lauderdale, FL  33315

Re: EEOC Charge Against City of Tampa, Fire Dept.
    No. 511201302397

Dear Mr. Ceus:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Tampa Area Office, Tampa, FL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Tampa Area Office, EEOC
    City of Tampa, Fire Dept.